FILED

December 21, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:41 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | |
|---|---|
| Archie Housewright ) | Docket No.: 2015-02-0129 |
|      Employee, ) | |
| v. ) | State File Number: 52109/2014 |
| City of Kingsport ) | |
|      Employer. ) | Judge Brian K. Addington |
| ) | |
| ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This cause came before the undersigned on December 8, 2015, for an Expedited Hearing. The present focus of this case concerns Mr. Housewright's right to medical treatment after a work injury that resulted in an aggravation of his pre-existing, but dormant, low back condition. The central legal issue is whether the employee sustained a compensable aggravation of his pre-existing low back condition, thereby entitling him to authorized medical treatment recommended by his treating physician, including surgery.[1] For the reasons set forth below, the Court grants the requested relief at this time.

### History of Claim

Employee, Archie Housewright, is a sixty-year-old resident of Sullivan County, Tennessee. (T.R. 1 at 1.) He testified that he has worked for the City of Kingsport for fifteen years, primarily as an operator of an automated garbage truck. (T.R. 4 at 1.)

On Friday, July 4, 2014, a large trash container fell out of the dumping mechanism and became lodged in the truck's hopper. *Id.* Mr. Housewright climbed the ladder affixed to the truck, lifted the thirty-three-pound trash container, and tossed the container over the left side of the truck. *Id.* When he tossed the container, he felt a pop in his lower back, resulting in immediate pain. *Id.* Mr. Housewright finished his shift and went home, thinking his discomfort would improve over the weekend. *Id.* He testified at the hearing, and in his affidavit, that had no pain in his lower back before the work accident. *Id.*

---

[1] Additional information regarding the certified issues, technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an Appendix.

1

By the following Monday, Mr. Housewright's low back pain worsened. *Id.* He contacted his supervisors, Chris Bentley and Rodney Deel, who advised that he should consult Katrina Hanog in Kingsport's Risk Management Department. *Id.* Mr. Housewright selected MedWorks from the physician panel Ms. Hanog provided. (Ex. 1 at 14.)

Mr. Housewright received conservative treatment at MedWorks for a lumbar strain. (Ex. 2 at 16.) The treating nurse practitioner, Thomas Young, prescribed medications, physical therapy, and placed him on work restrictions. (Ex. 2 at 21.) On August 15, 2014, Mr. Young ordered a lumbar MRI, in light of Mr. Housewright's lack of improvement and reported radicular symptoms. (Ex. 2 at 34.) The MRI revealed disc bulges at L4-L5 and L5-S1, and Mr. Young referred him to a "neurospine" specialist. (Ex. 2 at 36.)

Kingsport presented a panel of spine specialists to Mr. Housewright on September 5, 2014, from which he chose Dr. Galen Smith. (Ex. 2 at 6.) Dr. Smith was unavailable to offer treatment, so Mr. Housewright selected Dr. Glenn Trent as his authorized specialist. *Id.*

Dr. Trent first examined Mr. Housewright on September 15, 2014. (Ex. 2 at 42.) He also examined the MRI results, which he read as showing "spinal stenosis and spondylolisthesis at L4-5 level(s) on both sides with a moderate degree of nerve compression of the S1 nerve." *Id.* Dr. Trent opined that Mr. Housewright's stenosis at L4-L5 was "aggravated by injury on job" and recommended epidural steroid injections (ESIs). (Ex. 2 at 44.) He restricted Mr. Housewright to sedentary work with a ten-pound lifting restriction. (Ex. 2 at 45.)

On October 1, 2014, Mr. Housewright came under the care of Dr. William Platt, upon referral of Dr. Trent for evaluation and the provision of ESIs. (Ex. 2 at 47.) Dr. Platt agreed to provide the ESIs after having an opportunity to independently examine the MRI results. (Ex. 2 at 49.)

Dr. Trent examined Mr. Housewright on October 2, 2014. (Ex. 2 at 51.) He noted that Mr. Housewright had attempted to work by driving a truck, but the movement aggravated his pain. *Id.* Dr. Trent took him off work. *Id.*

After the ESIs, Mr. Housewright returned to Dr. Platt on October 24, 2014. (Ex. 2 at 53.) Dr. Platt noted that the ESIs improved Mr. Housewright's pain for two weeks, but that "this past Friday, he chopped some tree roots and Saturday, he had re-exacerbation of his pain." *Id.* Dr. Platt recommended repeat ESIs at L5-S1. (Ex. 2 at 54.)

On November 21, 2014, Dr. Platt noted that Mr. Housewright experienced a longer period of relief after the second ESI. (Exhibit 2 at 57.) He added that a third

2

injection was advisable, "given that we are making some progress and the alternative is major surgery." (Ex. 2 at 59.) However, by his return visit with Dr. Platt on December 17, 2014, Mr. Housewright's pain had increased, leading Dr. Platt to conclude, "I can't really justify offering him a third epidural at this point. He has failed naproxen as well. I think it is probably reasonable to go ahead and talk with Dr. Trent about what may have to be a surgical remediation." (Ex. 2 at 61.)

On January 7, 2015, Dr. Trent recommended an "L5-S1 fusion for spondylytic defect on left pars and decompression at L4-L5 bilateral for the stenosis." (Ex. 2 at 64.) Mr. Housewright was to consider the surgical option. He returned to Dr. Trent on April 6, 2015, and after discussing the details of the surgery, Mr. Housewright elected to proceed. (Ex. 2 at 67.) Dr. Trent added, "We will get clearance from work comp, medical clearance, and then proceed with surgery at that time. . ." *Id.* He took Mr. Housewright off work and noted on the Physician's Determination of Work Status Form that the condition was "Work Related." (Ex. 2 at 68.)

Kingsport became concerned about Dr. Platt's reference to Mr. Housewright "re-exacerbating" his back pain after chopping tree roots. On April 7, 2015, Ms. Hanog emailed Dr. Trent's office to advise of the statutory definition of an aggravation of a pre-existing condition and inquiring as to what Dr. Trent meant when he stated that the work accident "aggravated" Mr. Housewright's condition. (Ex. 1 at 60.)

Dr. Trent corresponded with Kingsport on April 9, 2015, to clarify his opinion. (Ex. 1 at 64.) He advised that he had no history of Mr. Housewright cutting trees, but was only aware of the "fall (sic) on the job" from July 4, 2014. *Id.* He noted that Mr. Housewright's condition "is more a functional decrease and a pain problem than a change in any physical or mechanical situation in his back." *Id.* Dr. Trent added the following opinion:

> The only thing I can comment is that his activity level has been reduced and his pain pattern has gone up and the patient relates this to the time of his fall (sic) on the job. I do not have to show a percentage that it is 50% work related. The patient states that his pain pattern is more than that. He was quite able to do his job without a lot of discomfort or problem prior to the fall (sic).

> It is still my opinion that this fall [sic] aggravation by the patient's history has certainly led to the surgery. I do think it is the spondylolisthesis and the stenosis at this level that has been aggravated by the injury and it is based on the patient's history, and I have no reason to doubt that.

Via correspondence dated June 10, 2015, Dr. Trent corrected his erroneous references to a "fall" being the mechanism of Mr. Housewright's injury. (Ex. 1 at 65.) He

3

then described the work injury as the garbage container incident of July 4, 2014. *Id.* Dr. Trent concluded as follows:

> I dictated a letter in April 2015 basically stating that I felt like the on the job injury aggravated the spinal stenosis and spondylolisthesis, which were pre-existing situations, but that this patient was able to do his job without pain prior to this injury on the job; that it was my opinion that this aggravation has led to the treatment that he has obtained, and that has now become a surgical recommendation on our part for Mr. Housewright. I do think the spondylolisthesis and spinal stenosis pre-existed the injury. I do think the injury as he has described it is certainly consistent with reproducing these symptoms, and I do think it has aggravated his back and produced his pain. I do think it is this on the job injury is [sic] directly related to his pain pattern at present.

*Id.*

Mr. Housewright's attorney corresponded with Dr. Trent on October 14, 2015, and asked for his opinion "regarding the predominate cause of Mr. Housewright's current back condition." (Ex. 3 at 3.) Dr. Trent responded the next day as follows:

> [I]t is still my opinion that [Mr. Housewright's] on the job injury on the dump truck is an aggravation of a pre-existing situation . . . I think the spondylolisthesis and the stenosis pre-existed the injury. Most likely, by the patient's history, this was aggravated by his on the job injury. It has markedly reduced his activity down to light duty. I do not think that the tree root incident really amounts to anything. It is still my opinion that the on the job injury has aggravated this pre-existing cause.

(Ex. 3 at 1.)

At the hearing, Mr. Housewright explained the tree root-chopping event. He testified that he told his son and grandson how to chop the root. He only used an axe with one hand to chop off small roots, "about as big around as your finger." His son and grandson did the work, while he sat and watched them on the porch.

Mr. Housewright returned to work with Kingsport and is not requesting temporary disability benefits. He testified that he has earned his regular paycheck since the injury and has used FMLA and sick leave for any time needed off work. He advised that he hunts deer from a blind on the ground, but has only hunted nine times this year. He has not taken his usual three-week hunting vacation. Mr. Housewright also testified that, per his understanding, once he has surgery, he will be out of work six to eight months.

4

Kingsport filed a Petition for Benefit Determination on April 30, 2015, citing the issue of whether Mr. Housewright sustained a compensable aggravation of his pre-existing condition, given the available medical evidence. (T.R. 1 at 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on July 9, 2015 (T.R. 2.) Kingsport filed a Request for Expedited Hearing pursuant to Tennessee Code Annotated section 50-6-239 (2014). (T.R. 3.)

At the Expedited Hearing, Kingsport argued it appropriately put Dr. Trent's request for surgery on hold in light of what Kingsport views as Dr. Trent's ambiguous statements on causation. Kingsport also argued that Mr. Housewright has failed to carry his statutory burden to establish by a preponderance of the evidence that his employment contributed more than fifty percent in causing the need for medical treatment, considering all causes. Kingsport asserted that Dr. Trent's statements to date are insufficient to carry that burden.

Mr. Housewright contended that the medical and factual proof shows that his pre-existing condition was asymptomatic before the work accident, and became symptomatic and disabling thereafter. He argued that the post-injury pain he experienced constitutes a compensable aggravation of his pre-existing condition, especially in light of the fact that he was able to work his normal job before the incident, but had to work limited duty thereafter. Mr. Housewright requested an Order compelling Kingsport to provide the surgery and other medical treatment recommended by his authorized provider, Dr. Trent.

## Finding of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party, but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987); *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course

and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level or a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. Lexis 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

Tennessee Code Annotated sections 50-6-102(13)(A) and (B) (2015) state that an injury by accident "shall not include the aggravation of a preexisting disease, condition, or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment," which can be accomplished, "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes."

Tennessee Code Annotated section 50-6-102(13)(E) states that "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation, but this presumption shall be rebuttable by a preponderance of the evidence."

The parties acknowledge that Dr. Trent is Mr. Housewright's authorized treating physician. Thus, his opinion on the issue of causation is presumed correct. Kingsport asked Dr. Trent whether, in his opinion, the July 4, 2014 work accident contributed more than fifty percent to Mr. Housewright's need for treatment. On April 9, 2014, Dr. Trent responded:

> I do not have to show a percentage that it is 50% work related. *The patient states that his pain pattern is more than that.* He was quite able to do his job without a lot of discomfort or problem prior to the fall (sic). It is still my opinion that this fall [sic] aggravation by the patient's history *has certainly led to the surgery.* I do think it is the spondylolisthesis and the stenosis at this level that has been aggravated by the injury and it is based on the patient's history, *and I have no reason to doubt that.*

(Emphasis added.)

Kingsport interprets Dr. Trent's statement as a refusal to say whether the work injury contributed more than fifty percent in causing the need for treatment. The Court rejects that interpretation and reads the above as Dr. Trent's affirmation that the work accident contributed more than fifty percent in causing Mr. Housewright's need for treatment. He opined that the work accident "has certainly led to the surgery," per Mr. Housewright's history, which he accepted completely.

On June 10, 2015, Dr. Trent confirmed that "this patient was able to do his job without pain prior to this injury on the job," and that "this aggravation has led to the

6

treatment that he has obtained, and that has now become a surgical recommendation." In response to Mr. Housewright's attorney, Dr. Trent stated, "the spondylolisthesis and the stenosis pre-existed the injury. *Most likely*, by the patient's history, this was aggravated by his on the job injury. It has markedly reduced his activity down to light duty. . . It is still my opinion that the on the job injury has aggravated this pre-existing cause."

(Emphasis added).

The Court finds that Dr. Trent's multiple statements as to the cause of Mr. Housewright's need for treatment and surgery are sufficient to establish that Mr. Housewright sustained a compensable aggravation of his pre-existing and dormant low back spondylolisthesis and stenosis. His statements of the injury having "certainly" led to the surgery and "most likely" being aggravated by the job are particularly persuasive. These statements support a finding of the injury aggravating the pre-existing condition by more than fifty percent in causing disablement and the need for medical treatment. Kingsport, therefore, is responsible for the treatment recommended by Dr. Trent, including surgery.

The Court finds that Mr. Housewright has come forward with sufficient evidence from which this Court could conclude that he is likely to prevail at a hearing on the merits. His request for medical benefits is granted.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Housewright has sustained a compensable aggravation of his pre-existing low back condition, and is entitled to reasonable, and necessary medical treatment recommended by his authorized treating physician, Dr. Trent, including surgery. Kingsport is obligated to provide same.

2. This matter is set for an Initial (Status) Hearing on January 22, 2016, at 10:00 a.m. Eastern Time.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

7

4. For questions regarding compliance, please contact the Worker's Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 21ˢᵗ day of December, 2015.**

_(signature)_

**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Brian K. Addington, Court of Workers' Compensation Claims. You must call at 855-543-5044 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice

8

of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Collective Exhibit, including state forms, medical records from Drs. Trent and Platt, and emails between Kingsport and Dr. Trent
2. Collective Exhibit, including the First Report of Work Injury, physician panels, and medical records from MedWorks and Drs. Trent and Platt
3. Correspondence between Dr. Trent and Mr. Housewright's attorney, October 2015

Technical record:[2]
1. Petition for Benefit Determination, April 30, 2015
2. Dispute Certification Notice, July 9, 2015
3. Request for Expedited Hearing, with Affidavit of Katrina Hanog, October 21, 2015
4. Affidavit of Archie Housewright, May 27, 2015

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order for Medical Benefits was sent to the following recipients by the following methods of service on this the 21st day of December, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent To: |
|---|---|---|---|---|---|---|
| Charlton Devault, Employee's Counsel | | | x | | | (423) 246-6490 |
| Mike Billingsley, Employer/Carrier's Counsel | | | | | x | j.billingsley@kingsporttn.gov |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

10